IHLEY v. PADGETT.

1. A deed of conveyance executed by an infant is not void, but unless there has been a confirmation is voidable by himself after attaining his majority, his heirs, or those entitled to his estate.
2. Where an infant joined in the execution of a deed of conveyance to a tract of land in which he held an interest in remainder, and the proceeds of this sale were, in part, invested in another tract of land of less value, the title to which was taken, in part, in his name; where such infant, after attaining his majority, lived upon said purchase and mortgaged his interest therein, and made no complaint for fourteen years, and until the death of the life tenant—his acquiescence in the deed signed by him when an infant was such as to fairly authorize the inference of his assent to it.
3. If an infant executes a deed of conveyance of his interest in remainder in a tract of land, he may institute action to vacate such deed as soon as he attains his majority, notwithstanding he has no right to the possession of such interest until the life tenant dies.

Before WITHERSPOON, J., Hampton, September, 1886.

The opinion fully states the case.

*Messrs. Warren & Warren*, for appellant.

*Mr. C. J. C. Hutson*, contra.

October 6, 1887.　The opinion of the court was delivered by

MR. JUSTICE McGOWAN.　Nancy Ihley had a life estate in a plantation known as "Rice Hope" under her father's will, which gave it to her, "her heirs and assigns, in trust, nevertheless, that all the productions of rent of said land be applied to the use of the said Nancy and her children during the said Nancy's life time, and at her death to be equally divided among her children share and share alike, be they few or many," &c.　Nancy had a husband, S. L. Ihley, and several children, among whom was

George C. Ihley, the plaintiff. About the year 1870, Nancy Ihley and her children, who were all grown up and apparently of age, negotiated a sale of "Rice Hope" to one Macon B. Allen at the price of five dollars per acre, and in consideration thereof, the mother and all her children, George C. and his three sisters, united in a conveyance of the plantation to him, under whom the defendants hold. At that time there was no claim that the plaintiff was under age or unwilling to sign the deed; but, on the contrary, he received $25 for going in the night to summon the heirs and witnesses who were to sign the deed. It seems that without objection the purchase money was delivered to the father, S. L. Ihley, and $1,200 of it, some time after, was used in the purchase of another place, known as "Log Hall," and the title made to the mother, Nancy, George C., the plaintiff, and one of his sisters jointly, and the family removed to this new place, and cultivated the same.

In 1885, Nancy Ihley, the mother, died, and in January, 1886, George C. Ihley, the youngest child, instituted this action to recover his undivided share of the Rice Hope plantation; alleging that, when he, with the other children, signed the deed of Rice Hope to Allen, in 1870, he was not quite twenty-one years of age, having been born March 12, 1850, and the deed executed in May or June, 1870; that he signed the deed "through persuasion and under compulsion," and had never received anything for his interest; and praying that the conveyance from himself to Macon B. Allen be declared void and the same be delivered up to be cancelled, &c.

The cause came on to be heard by Judge Witherspoon, who, having taken the testimony which is in the "Brief" decreed that the deed originally was not void, but merely voidable; that it was not executed by the plaintiff through persuasion or compulsion; and that the plaintiff, after he attained his majority, had confirmed it, by accepting in lieu thereof an interest in the "Log Hall" place, and by acquiescing in the sale for more than fourteen years, from March, 1871, when he came of age, to January, 1886, and he therefore dismissed the complaint.

From this decree the plaintiff appeals to this court upon the ground: "That his honor erred in deciding that the plaintiff,

George C. Ihley, confirmed the deed executed to Macon B. Allen of the Rice Hope plantation during his minority, after he reached his majority, by long acquiescence and by receiving his proportionate share of said plantation or its equivalent in another tract of land." &c.

Clearly, the plaintiff cannot avoid his deed upon the ground that there was coercion or positive fraud practised to induce him to sign it. There is not the slightest evidence either of coercion or of fraud in obtaining the conveyance. His appearance did not afford the evidence that he was under age. It was not shown that he was lacking in ordinary capacity. He assisted in making arrangements for the execution of the deed, and the purchaser Allen did not know that he was a minor.

There is no good objection to the deed, unless it arises out of the fact, that the plaintiff was by a few months under age when he, together with the other members of the family, executed it. Did the minority of the plaintiff when he signed the deed make it as to him absolutely void or only voidable? Without going into the question as to what acts of a minor are absolutely void and what are voidable only, it will be quite sufficient for the purposes of this case to say that it is well established that, "All gifts, grants, or deeds made by infants by deed or matter in writing, and to take effect by delivery of his hand, are voidable only by himself, his heirs, or those who are entitled to his estate." Zouch v. Parsons, 3 Burr., 1794; Lester v. Frazer, 2 Hill Ch., 541; Cheshire v. Barrett, 4 McCord, 241; 17 A. D., 735. From its very nature a thing only voidable needs no positive confirmation, but stands good until impeached by a proper party. In the first instance, confirmation has no proper application to it, but when there is an effort to avoid the act, it becomes important to inquire whether there has been confirmation; for if so, the matter has passed beyond the control of the party, and is no longer voidable. The plaintiff here seeks to avoid his deed upon the ground that he was under age when he executed it, and the question is whether he had already confirmed it after coming of age before the application was made.

In the case of Norris v. Vance (3 Rich., 165), it was held that there may be confirmation of an infant's act in either of

three ways: "There must be after he attains his majority, with a full knowledge of his rights, (1) acquiescence from which assent may be fairly inferred; (2) an adequate benefit enjoyed which has grown directly or indirectly out of the contract; or (3) some direct act of express assent." Does this case come under any of the heads of this classification? We cannot say that the evidence shows any direct act of express assent by the plaintiff to the sale and conveyance of Rice Hope after he attained his majority. It does, however, appear that a part of the price of Rice Hope ($1,200) was applied in the purchase of another place (Log Hall), the title to which was executed to the plaintiff, his mother, and one of his sisters jointly, and that they removed to the new place and resided there many years, claiming it as their own; and that the plaintiff, becoming embarrassed in his affairs, mortgaged his interest therein to secure a debt of his own. We cannot doubt that the plaintiff was cognizant of these facts and enjoyed his interest in the new place, which arose "directly" out of the sale of Rice Hope, as, in part at least, a substitute for the place sold. See *Belton* v. *Briggs*, 4 *DeSaus.*, 465; *Irvine* v. *Irvine*, 9 *Wall.*, 626. In the case from DeSaussure which was somewhat like this, it was said: "If Thomas Briggs (former infant) did not mean, in accepting the Dobbins tract from his mother, to confirm her acts, he meant to commit a fraud, which the court will not sanction. See *Ambler*, 419; 3 *Atk.*, 607; 1 *Vern.*, 182, and 2 *Vern.*, 225."

It is urged, however, that even if this be so, the third of Log Hall was not a benefit "adequate" to plaintiff's interest in Rice Hope, and for that reason its acceptance could not operate as a confirmation of the deed of the latter. While it may be, in order to raise an implied assent by substitution, that the property accepted should bear some proportion to that sold, it should not be overlooked that the question is really not one of payment, but as to what was the intention of the party. But without regard to the relative value of plaintiff's interest in Log Hall, we concur with the Circuit Judge that the acquiescence of the plaintiff in the conveyance to Allen was such as "to authorize fairly the inference of his assent to it." He was twenty years of age when he voluntarily signed the deed in 1870. Attaining his majority

in 1871, from that time until 1886, when he instituted this pro-
ceeding to set aside his conveyance, over fourteen years, he held
his interest in the Log Hall tract and acquiesced in the deed of
Rice Hope to Allen. It was very properly conceded in the
argument, that acquiescence for such a period of time would
have been amply sufficient to make out a case of implied confir-
mation, if there had been no insuperable .obstacle in the way of
his avoiding the deed during the life of his mother.

But it was urged that there was such obstacle; that the plain-
tiff being only a remainderman, had no right to claim actual
possession of any portion of the Rice Hope plantation until after
the death of Mrs. Ihley, the life tenant, and as a consequence he
could not make application to have his deed annulled until that
time (1885), and, that being the case, it could not properly be
said that he "acquiesced" in that which it was out of his power
to avoid. It may be that the death of the mother was the time
at which the land was to be divided among the children. But
we do not understand that the plaintiff was thereby precluded
from making application to set aside his deed, signed as alleged
when he was under age, at any time after he attained his
majority. The two matters, in point of time, are not necessarily
identical. He had a salable interest in Rice Hope during the
life of his mother, and having conveyed that interest to Allen,
we know of no reason why he could not have assailed the
deed, executed when he was under age, at any time after he
came of age, and that whether his mother, the life tenant, was
then living or dead. In the view that it was his intention to
make that question, it was due to fair dealing, to the purchasers
and to all concerned, that it should have been made promptly after
he attained his majority. We do not think it could alter the
case if, as alleged, the plaintiff was under the impression that he
could not make the question until after the death of his mother,
the life tenant. He certainly had full knowledge of all the facts,
and after he had reached his majority, he must, like all other
persons, be assumed to have known the law; and if he did not
claim his rights, others cannot be made to suffer the consequences.

We concur with the Circuit Judge that the acquiescence of the
plaintiff in his deed to Macon B. Allen for fourteen years after

he attained his majority, whilst enjoying his substituted interest in Log Hall, must be considered as a confirmation of the same. "The rules with respect to what shall amount to a confirmation of a sale made by an infant, after he attains full age, are better ascertained. A very slight circumstance, demonstrating his assent, will bind him, or any act by which his assent is manifested. Thus if an infant purchase land, and continue in possession after he attains full age, it will be regarded as a confirmation of the purchase; or if he make exchange of the lands, or if he take a lease rendering rent and continue in possession several years after he comes of age, .it is a confirmation of the contract *ab initio*, and he is bound for the rent in arrear. In short, any word or action from which his assent to the contract may fairly be deduced, will be regarded as a confirmation." *Cheshire* v. *Barrett, supra.*

The judgment of this court is, that the judgment of the Circuit Court be affirmed.