### SPRECHER *v.* SPRECHER
[No. 56, October Term, 1954.]

*Decided January 13, 1955.*

*Motion for rehearing and modification of opinion filed January 31, 1955.  Rehearing denied and opinion modified in part February 11, 1955.*

The cause was argued before BRUNE, C. J. and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Walter C. Capper* and *Thomas N. Berry,* with whom was *Harold H. Hoffman,* on the brief, for appellants.

*T. Aubrey Kemp,* for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Washington County setting aside a deed from the appellee to Martin L. Ingram, Trustee, dated July 28, 1950, and a deed of the same date from Ingram, Trustee, to Myron A. Sprecher and Teresa I. Sprecher, as joint tenants, with right of survivorship. The ground of the Chancellor's action was that the deeds were executed while the appellee was still an infant, and were disaffirmed by her within four months after she became of age. The appellant contends that the Chancellor .erred in refusing to find that the appellee ratified and confirmed the deeds, or at least failed to seasonably disaffirm them.

The property conveyed, a six-room bungalow and lot known as 345 S. Cleveland Avenue, in Hagerstown, was purchased as a home by the appellant and her then husband, Frank B. Sprecher, on May 16, 1939. Title was taken in their names as tenants by the entireties. The price was $3,750, and they executed a mortgage to The

First Federal Savings and Loan Association of Hagerstown in the amount of $2,700. The appellee, their daughter, had been born on July 14, 1932, and lived with her parents in the home until they separated on July 12, 1948. At that time the mortgage had been fully paid, out of the husband's wages as a brakeman, out of her wages, or perhaps out of their joint earnings since they were both employed, but on July 29, 1948, a new mortgage was obtained in the amount of $1,725. The proceeds were paid to Mrs. Sprecher, who testified that she used the money in part to repay a loan of $1,500 made to her by her mother, who resided in the home with them. On September 10, 1948, the parents and the daughter, who was then sixteen years of age, met with their attorneys, and it was agreed that the property be deeded unconditionally to the daughter, subject to the mortgage. On the same day the parents executed a deed of the property to trustees, who were in fact their respective attorneys, which recited that the conveyance was "upon trust to convey the same by deed to Teresa I. Sprecher". On September 13, 1948, Frank B. Sprecher filed a bill for divorce against Mrs. Sprecher, and obtained a decree of absolute divorce on October 8, 1948. On November 13, 1948, the trustees executed a deed to the daughter.

The Chancellor found as a fact that at the time of the meeting to discuss a property settlement the father was unwilling that the mother should retain an interest in the property, but agreed that both should convey to the daughter. While the subsequent decree of divorce did not provide for custody, the daughter continued to live with her mother in the property, and the father contributed to the daughter's support until she was eighteen years of age and obtained employment. The Chancellor rejected the appellant's contention that she did not understand that she was parting with her interest in the property, in view of the plain language of the deed and the circumstances of its execution. The validity of these conveyances is not questioned on this appeal, and it is conceded

that the infant was competent to take title to the property. See 5 *Tiffany, Real Property* (3d ed.) § 1369.

It appears, however, that on June 4, 1949, the appellant took the appellee to the office of the appellant's attorney and had her sign an agreement whereby Myron A. Sprecher agreed to support Teresa I. Sprecher during the period of her infancy and to maintain a home for her and cause her to attend school and high school. Teresa agreed, "as soon as practical after she shall attain the age of eighteen years", to reconvey the home property to Myron and herself as joint tenants. The appellee was sixteen years old at the time. On July 28, 1950, shortly after her eighteenth birthday, there was another visit to the attorney's office, and the execution of a deed to the attorney, as trustee, and a reconveyance to her mother and herself as joint tenants.

The appellee had graduated from high school in June, 1950, secured permanent employment in August, 1950, and thereafter paid her mother $10 a week board. She testified that she also paid three or four hundred dollars on the mortgage out of her earnings, but this was denied by the mother. On January 25, 1951, the appellee married Francis A. Pheil and shortly thereafter moved to her husband's apartment. Mrs. Sprecher continued to live in the property in question, and is still there. In 1952 she obtained an improvement loan on the property in the amount of $747 and spent it on improvements. The daughter was not asked to join in the application for this loan, or to execute any papers in connection therewith. On September 23, 1953, Mrs. Sprecher married Leroy S. Hite, who moved into the property with his child. The appellee became twenty-one years of age on July 14, 1953. In August, 1953, the appellant asked the appellee to join her in placing another mortgage on the property. The appellee declined to do so and a quarrel ensued. In October she consulted an attorney and on November 10, 1953, she wrote a letter to her mother formally disaffirming the deed she had executed on July 28, 1950. Shortly thereafter she filed the present bill.

At common law the period of infancy extended to the age of twenty-one years in the case of both sexes. 1 *Williston, Contracts* (Rev. ed.), § 224; 5 *Tiffany, Real Property* (3d ed.) § 1362. By statute in Maryland certain disabilities were removed in the case of females at the age of eighteen. One of the earliest of these statutes was Chapter 101, Acts of 1798, now codified as Code (1951), Art. 93, sec. 206, requiring a guardian to distribute the personal property of a female ward when she became sixteen (later changed to eighteen). See also Code (1951), Art. 93, sec. 158, and sec. 164. But in *Davis v. Jacquin & Pomerait,* 5 H. & J. 100, it was held that although she could receive the property she could not dispose of any of it until she attained the age of twenty-one years. See also *Fridge v. The State,* 3 G. & J. 103, 115. Likewise, in *Greenwood v. Greenwood,* 28 Md. 369, 385, it was held that the right of a father to services of a female minor continued until she was twenty-one, despite a statutory limitation to eighteen in the case of apprenticing a female child. Statutes have been passed dealing with the right of females between the ages of eighteen and twenty-one to release dower, Code (1951), Art. 16, sec. 43; to make a will, Code (1951), Art. 93, sec. 346; to release an executor, administrator or guardian, Code (1951), Art. 79, sec. 1; to release a trustee, Code (1951), Art. 79, sec. 7; to execute a release for any money paid, property delivered or obligation satisfied, Code (1951), Art. 79, sec. 10; to make a deed of trust of her property, real, personal or mixed, provided the same is approved and sanctioned by a court of equity, Code (1951), Art. 21, sec. 1. See also Code (1951), Art. 21, sec. 2 and sec. 3. We do not find any statute altering the rule stated in *Davis v. Jacquin, supra.* A conveyance made by an infant under twenty-one years of age is not void, but is voidable, if disaffirmed within a reasonable time after he or she attains the age of twenty-one years. *McBriety v. Spear,* 191 Md. 221, 226; *Amey v. Cockey,* 73 Md. 297, 303; 1 *Williston, Contracts* (Rev. ed.), § 234. We think four months is a reasonable time under the cir-

cumstances. See the cases collected in a note 5 A. L. R. 2d 20, 22.

The appellant contends that the appellee ratified the deed prior to her disaffirmance. The appellant testified that in August, 1953, the appellee and her husband, Mr. Pheil, both said they didn't want to live in the property, that the appellee said: "I don't see why you don't let me sign the property over to you, my share of it, then you won't have to have anyone else to sign a deed, or a mortgage, either one." The appellant also testified that the Pheils wanted $5,000 for their interest; she offered them $3,000, but they would not take it. The appellant's husband, Mr. Hite, her sister and her brother-in-law testified that Teresa, in the presence of her husband, made statements in August, 1953, to the effect that the property belonged to her mother and she did not want it. The appellee and her husband denied that such statements were made. We cannot hold that the Chancellor was clearly wrong in finding that these statements, if made, did not amount to ratification under the circumstances. The offer to convey her share for a consideration did not ripen into an agreement. At most, it was no more than a tacit recognition of the fact that she had previously conveyed a half interest to her mother. As pointed out by the Chancellor, the appellee had not then consulted counsel and was unaware of her rights. Indeed, it seems to have been assumed by everyone that the appellee was absolutely bound by her conveyance when she was eighteen years of age. Some of the authorities hold that ratification may be effective although made in ignorance of one's legal rights. 2 *Black, Rescission and Cancellation* (2d ed.) § 303; 1 *Williston, Contracts* (Rev. ed.) § 239; *Restatement, Contracts*, § 93. But the rule in Maryland seems to be to the contrary. *Wilson v. Md. Ins. Co.*, 60 Md. 150, 154; *Trader v. Lowe*, 45 Md. 1, 12. In any event, mere acquiescence or inaction, if not long continued, is not enough. All of the authorities seem to recognize that there must be some positive act or declaration of an unequivocal nature in

order to establish ratification. See note to the case of *Levering v. Heighe,* 2 Md. Ch. 81; 5 *Tiffany, Real Property* (3d ed.) § 1364; 6 *Thompson, Real Property* (perm. ed.) § 2948. We think the general statements testified to in the instant case fall short of this.

The appellant also contends that the appellee is barred or estopped from disaffirming her conveyance by the acceptance of benefits during her infancy which she is unable to restore. If we assume, without deciding, that the right of disaffirmance and recovery of the consideration paid may be barred under some circumstances, cf. *Adams v. Beall,* 67 Md. 53, 56, *Long v. Long,* 62 Md. 33, 71, and *McBriety v. Spear, supra,* we think the principle cannot properly be invoked in the instant case. The appellee was under no legal or moral duty to reconvey a one-half interest to her mother. The prior conveyance to her had been made as a result of a property settlement between her father and mother, by which the mother was bound. The conveyance was upon a good consideration and in the nature of an advancement that would negative the implication of a resulting trust. *Mott v. Iossa,* 181 A. 689 (N. J. Ch.). Nor did the mother undertake to perform any services for the appellee that she was not legally obligated to render. As the natural guardians of the infant child, she and the father were jointly and severally charged with its support, care, nurture, welfare and education. Code (1951), Art. 72A, sec. 1. The appellee graduated from high school before she was eighteen, and thereafter until the time of her marriage in 1951, when she left the home, was employed and paid board to her mother. Until she was eighteen her father contributed to her support. These facts distinguish the case of *Wilhelm v. Hardman,* 13 Md. 140, where necessaries, in the form of support and education, were supplied by a third party.

The decree appealed from set aside the deeds and declared the property to be the sole and absolute property of Teresa I. Sprecher Pheil, subject to a balance of $408.92, due on the mortgage of $1,725, placed on the

property July 29, 1948. The Chancellor held that the appellant was not entitled to reimbursement for mortgage payments made by her during the period from that date to March, 1953, when she discontinued making payments. The daughter did not become twenty-one until July 14, 1953. We see no occasion to disagree with the Chancellor's finding. If we assume, without deciding, that reimbursement might be allowed under some circumstances, the appellant here failed to make out a case for equitable relief. Cf. *Mott v. Iossa, supra.* The entire proceeds of the mortgage were paid to her and not to the infant, and most of the payments made by the mother were made during the period when the property stood in the name of the daughter alone. The appellee claimed to have made payments of more than $300 in 1951. The daughter is now required to assume payment of the balance due. Moreover, the mother has occupied the premises rent-free during the whole period.

The Chancellor impressed an equitable lien on the property in the amount of $897.28, representing sums expended by the appellant in improvements to the property, and to pay the balance due on her personal loan for that purpose, and required the appellee to pay the costs below. The appellee has not appealed from that part of the decree, so its propriety is not before us. Under all the circumstances, we think the decree appealed from should be affirmed.

*Decree affirmed, with costs.*